# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALI RICHARD,

        Plaintiff,

  v.

STEVEN R. STROM, NANCY
O'BRASKEY, REVEREND WILLIAMS,
KARL LEWIS, JOHN ALDI, SCOTT ERFE,
MICHAEL BIBENS, WILLIAM
MULLIGAN, DEPUTY WARDEN
MUDANO, COMMISSARY SERVICE
MANAGER FAILLA, COUNSELOR
SUPERVISOR BLANCHARD,
CORRECTIONAL OFFICER WHITE, and
MAILROOM PERSONELL NORTON,

        Defendants.

CASE NO. 3:18-cv-1451 (CSH)

NOVEMBER 19, 2018

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

Plaintiff Ali Richard, currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker") in Suffield, Connecticut, has commenced this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff names thirteen officials at MacDougall-Walker as Defendants in their individual and official capacities: Steven R. Strom, Nancy O'Braskey, Reverend Williams, Karl Lewis, John Aldi, Scott Erfe, Michael Bibens, William Mulligan, Deputy Warden Mudano, Commissary Service Manager Failla, Counselor Supervisor Blanchard, Correctional Officer White, and Mailroom Personnel Norton. Plaintiff contends that Defendants violated his right to freely exercise his religion, discriminated against him on the basis of his

religion, denied him equal protection of the laws, deprived him of property in violation of due process, and retaliated against him. He seeks declaratory and injunctive relief from the Defendants in their official capacities and monetary relief from the Defendants in their individual capacities. [*See* Doc. 6 at ¶ 1.]

Richard's motion to proceed *in forma pauperis* was granted on August 31, 2018. [*See* Doc. 5.] Richard filed an Amended Complaint as a matter of course on September 18, 2018 (the "Amended Complaint"). [*See* Doc. 6.] The Court now reviews Richard's Amended Complaint to determine whether his claims may proceed under 28 U.S.C. § 1915A. For the reasons set forth below, the Court dismisses Plaintiff's Amended Complaint in part.

## I.       Standard of Review

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against governmental actors and "dismiss . . . any portion of the complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *see also Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation

marks and citation omitted). Accordingly, a Complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that *pro se* pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (internal quotation marks and citation omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].""). Even in a *pro se* filing, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

## II.    Plaintiff's Allegations

The factual allegations contained in Plaintiff's complaint are recounted below, recited in the light most favorable to Plaintiff.

Plaintiff is a Moorish-American and diligently practices his Moorish religion. [Doc. 6 ¶ 20.] The staff at MacDougall-Walker permit inmates of the Moorish Science religion to practice their faith individually using books, religious newspapers, audio recordings, and other items. [*Id.*

¶ 21.]

On or about December 14, 2017, Plaintiff submitted a written request to Defendant Williams, the Director of Religious Services for the Department of Correction, seeking to purchase a fez to be used during religious practice.  [*Id.* ¶ 22.]  In the Moorish religion, a fez is believed to symbolize spiritual and physical aspects of life and to provide spiritual protection. [*Id.* ¶ 23.]  It is an "essential component of the Moorish religion and a requirement for all Moorish practitioners."  [*Id.*]

On February 5, 2018, Plaintiff received written notification from Defendant Lewis that all ten members of the Religious Review Committee (the "Committee")—Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla (the "Committee Defendants")—had denied his request to purchase the fez due to safety and security concerns. [*Id.* ¶ 24.]  Plaintiff appealed the decision, arguing that the fez is an essential component of his religion and that the security concerns were unfounded.  [*Id.* ¶ 25.]  Plaintiff also noted that the Committee had previously approved requests from Nation of Islam and Five Percenter inmates to purchase crowns, which were similar to the fez in design.  [*Id.*]  The appeal was denied.  [Doc. 6 ¶ 26.]  As a result, Plaintiff has been unable to freely and fully practice his religion.  [*Id.* ¶ 27.]

During this time, Plaintiff had been communicating with K. Bin Bey, the Grand Mufti of the Moorish Science Temple of America.  [*Id.* ¶ 28.]  On February 16, 2018, Plaintiff received a letter from the Grand Mufti.  [*Id.* ¶ 29.]  Mailroom personnel White and Norton had torn the return address from the envelope.  [*Id.* ¶¶ 29, 32.]  Plaintiff immediately reported the issue to the unit officer delivering the mail and submitted a written informal complaint to the deputy warden. [*Id.* ¶ 30.]  Defendant Blanchard, the mailroom supervisor, responded to Plaintiff's complaint

and assured him that it would not happen again.  [*Id.* ¶ 31.]  On March 23, 2018, Plaintiff received another letter from the Grand Mufti.  [*Id.* ¶ 33.]  Again, the return address had been torn off the envelope.  [*Id.*]  Plaintiff filed a grievance which was denied initially and on appeal.  [*Id.* ¶¶ 34-35.]

Plaintiff also alleges that he ordered a book entitled "Nationality, Birthrights, and Jurisprudence" in January 2018.  [Doc. 6 ¶ 39.]  The book "explains the legal process for becoming a Moorish-american, which the plaintiff must claim as his nationality in order to be recognized as a member of the Moorish Science Temple of America."  [*Id.* ¶ 40.]  Staff at MacDougall-Walker did not permit the book to enter the facility, telling the Plaintiff that the Media Review Committee had placed the book on the rejection list on July 21, 2015 based on safety and security concerns.  [*Id.* ¶ 41; *id.* at 28.]  Plaintiff appealed the decision and, on July 9, 2018, the Director of Security at MacDougall-Walker informed him that the book had been re-evaluated and the Media Review Committee's prior rejection overturned.  [*Id.* ¶¶ 42-43.]  However, Defendants Blanchard, White and Norton (the "Mailroom Defendants") returned the book to the vendor in retaliation for the plaintiff previous complaints regarding mail issues, falsely claiming that they did not receive the plaintiff's appeal within the time permitted for filing.  [*Id.* ¶¶ 44-45.]

## III.  Discussion

Plaintiff includes three counts in his Amended Complaint.  In the first count, Plaintiff includes all federal constitutional claims.  He contends that all Defendants violated his right to freely practice his religion under the Free Exercise Clause and Establishment Clause of the First Amendment and discriminated against him because of his religion in violation of the Fourteenth

Amendment Equal Protection Clause. He also alleges that the Mailroom Defendants deprived him of his religious book without affording him due process in violation of the Fifth Amendment, and retaliated against him for filing a grievance in violation of his rights under the First Amendment. In the second count, Plaintiff contends that all Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-2 by interfering with his purchase of the book and fez and by removing the return address from his correspondence with the Grand Mufti. In the third count the plaintiff asserts state law claims against all Defendants for religious discrimination and equal protection violations under Article First §§ 3 and 20 of the Connecticut Constitution, and against the Mailroom Defendants for due process and free speech violations under Article First §§ 8 and 14 of the Connecticut Constitution.

For the reasons discussed below, the Court will allow Plaintiff's Free Exercise and RLUIPA claims to proceed against all Defendants with respect to Plaintiff's attempts to procure a fez and religious book. It will also permit Plaintiff's Establishment Clause and Equal Protection claims to proceed against the Committee Defendants, and his retaliation claims under the U.S. and Connecticut Constitutions to proceed against the Mailroom Defendants. However, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under Article First §§ 3, 8, and 20 of the Connecticut Constitution. Additionally, Plaintiff's Equal Protection, Establishment Clause, and due process claims against the Mailroom Defendants, as well as all claims arising out of the Mailroom Defendants' purported removal of a return mailing address, will be dismissed for failure to state a claim upon which relief may be granted.

A.  First Amendment Free Exercise Claims Against All Defendants

Plaintiff argues that Defendants' denial of permission to purchase a fez, interference with his purchase of a religious book, and removal of the return address from a letter from the Grand Mufti each violates his right to free exercise of his religion under the First Amendment of the United States Constitution.  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 283 U.S. 342, 348 (1987); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.").  But a prisoner's right to exercise his religion is not absolute, and must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  Accordingly, a prisoner's free exercise claim must be judged "under a 'reasonableness' test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citation omitted).

To state a First Amendment free exercise claim, Plaintiff "must make a threshold showing that 'the disputed conduct substantially burden[ed] his sincerely held religious beliefs.'" *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 274-75).[1]  Specifically, he must allege facts showing that he sincerely holds a particular belief,

_____

    [1]  The Second Circuit has expressed uncertainty as to the continued viability of this threshold showing in light of the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872 (1990).  *See Holland v. Goord*, 758 F.3d

that the belief is religious in nature, and that the challenged action substantially burdened his exercise of that belief. *See Ford*, 352 F.3d at 588-91. A belief is substantially burdened where the state has "put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (internal quotation marks and citation omitted). In considering whether a prisoner has made the required showing, the court does not "evaluate the objective reasonableness of the prisoner's belief" but considers only whether the prisoner "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.

Plaintiff alleges that he is a "devout Moorish-american" [sic] and "diligently practices his Moorish religion," including through correspondence with a Moorish religious leader. [Doc. 6 ¶ 20.] Plaintiff further alleges that a fez is believed to provide spiritual protection, is an essential component of the Moorish religion, and is a requirement for all Moorish practitioners. [*Id.* ¶ 23.] He also alleges that *Nationality, Birthrights, and Jurisprudence*—the book that mail personnel returned to the vendor—"explain[ed] the legal process for becoming a Moorish-american," which the Plaintiff was required to claim as his nationality in order to be recognized as a member of the Moorish Science Temple of America. [*Id.* ¶ 40.] These allegations, taken together and construed liberally, state a plausible claim that Plaintiff sincerely held a religious belief that was substantially burdened by the Committee's denial of his request to purchase a fez and,

---

215, 220 (2d Cir. 2014) (noting that "[i]t has not been decided in this Circuit whether . . . a prisoner must show at the threshold that the disputed conduct substantially burdens his [or her] sincerely held religious beliefs," but declining to reach the question); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (noting that the Second Circuit has not yet decided the issue and assuming that the substantial burden requirement applies). But, absent instruction to the contrary, Second Circuit courts have continued to assume the validity of the substantial burden test when addressing free exercise claims. *See, e.g., Jones v. Annucci*, No. 16-CV-2516(KMK), 2018 WL 910594, at *13 (S.D.N.Y. Feb. 14, 2018) (prisoner must make threshold showing that disputed conduct substantially burdens

subsequently, by the Mailroom Defendants' interference with his purchase of an important religious book.

There is no basis, however, for Plaintiff's Free Exercise claim against the Mailroom Defendants for removal of the return address on two letters from the Grand Mufti. Plaintiff acknowledges that he contacted the Grand Mufti both prior and subsequent to removal of the return addresses. It therefore cannot be reasonably inferred—nor does Plaintiff allege—that the lack of a return address on the envelope interfered with or otherwise burdened his religious practice. Plaintiff's Free Exercise claim as to the Mailroom Defendants' removal of the return address on two letters will therefore be dismissed.

### B. RLUIPA Claims Against All Defendants

RLUIPA was intended to provide greater protection than is available under the First Amendment Free Exercise Clause, *see Holland*, 758 F.3d at 224, and prohibits state and local governments from taking actions that substantially burden the religious exercise of any person unless the government shows that the action constitutes the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc-1(a)(1)-(2); *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015). However, a plaintiff's remedies under RLUIPA are limited: RLUIPA does not create a private right of action against state officials in their individual capacities, nor does it authorize recovery of damages against state officials in either an individual or official capacity. *Holland*, 758 F.3d at 224.

For the same reasons that the Court permitted Plaintiff's Free Exercise claim to proceed against Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano,

---

sincerely held religious beliefs).

and Failla for denial of permission to purchase a fez, and against Defendants Blanchard, White, and Norton for returning Plaintiff's religious book to the vendor, the Court will permit the RLUIPA claim to proceed against these Defendants in their official capacities only for equitable relief. *See, e.g.*, *Michalski v. Semple*, No. 3:16-cv-2039(VLB), 2017 WL 4475994, at *8 (D. Conn. Oct. 6, 2017) (permitting RLUIPA claim to proceed based on same allegations as First Amendment free exercise claim). And, for the same reasons the Court dismissed Plaintiff's Free Exercise claims regarding removal of the Grand Mufti's return address, the Court dismisses Plaintiff's RLUIPA claims with respect to those actions.

C.  First Amendment Establishment Clause Claims Against All Defendants

Plaintiff next claims that the Committee Defendants violated the Establishment Clause of the First Amendment when they permitted members of the Nation of Islam and the Five Percenters to purchase crowns but denied his request to purchase a fez. He also alleges that the Mailroom Defendants violated the Establishment Clause by returning his book to the vendor despite his timely appeal of the book's rejection, and by removing the Grand Mufti's return address from two incoming letters. The First Amendment directs that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. "The Establishment Clause guarantees . . . that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion." *Salahuddin v. Perez*, No. 99 CIV. 10431 (LTS), 2006 WL 266574, at *8 (S.D.N.Y. Feb. 2, 2006) (internal citations and quotation marks omitted). Accordingly, the government must neither encourage nor discourage religion and must maintain neutrality. When presented with an Establishment Clause claim, a court must ask whether the challenged practice (1) has a secular purpose; (2) advances

10

or inhibits religion in its principal or primary effect; and (3) fosters excessive entanglement between religion and the state. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). However, in a prison setting, legitimate penological interests must temper assessment of alleged violations of the Establishment Clause. *Id.*

Plaintiff's allegations that he was denied permission to purchase a fez while members of the Nation of Islam and the Five Percenters were permitted to purchase crowns are sufficient to state a claim for violation of the Establishment Clause. Although the Committee identified a secular purpose for its denial of Plaintiff's request—security concerns—Plaintiff has plausibly alleged that, in light of the Committee's differential treatment of other religious groups, their decision fostered excessive entanglement between religion and the state and had a primary effect of inhibiting his religion while favoring other religions. *See Loccenitt v. City of New York*, No. 12 CIV. 948 (LTS), 2013 WL 1091313, at *4 (S.D.N.Y. Mar. 15, 2013).

However, even construing Plaintiff's pleadings liberally, he fails to plausibly allege an Establishment Clause violation regarding the return of his book. Plaintiff himself theorizes that the book was returned in retaliation for Plaintiff's previous complaints concerning the Mailroom Defendants [*see* Doc. 6 ¶ 45]—although improper, nonetheless a secular purpose—and Plaintiff offers only impermissible conclusory speculation that the book was returned in retaliation for "his religious correspondence." [*Id.*] Plaintiff also fails to allege that the Mailroom Defendants' actions had the primary effect of either advancing or inhibiting religion, nor does he explain how their actions fostered excessive entanglement of government with religion.

Plaintiff also fails to state a claim for violation of the Establishment Clause based on the Mailroom Defendants' purported removal of the Grand Mufti's return address from incoming

letters.  The actions cited by Plaintiff do not suggest any religious animus or preference.  He cites

no racially- or religiously-charged remarks and no comparable situations in which other religious

groups were treated better.  In fact, the allegations fail to demonstrate any invidious intent

whatsoever.   On this record, no reasonable fact finder could draw an inference that the

Mailroom Defendants' actions had the primary effect of advancing or inhibiting religion or

fostered excessive governmental entanglement with religion.  Thus, Plaintiff's Establishment

Clause claims as to the Mailroom Defendants are dismissed.

D.  Equal Protection Claims Against All Defendants

Plaintiff further alleges that the Committee Defendants violated his right to equal

protection of the laws and discriminated against him on the basis of his religion by denying him

permission to purchase a fez.  He also alleges that the Mailroom Defendants violated the Equal

Protection clause by returning his book to the vendor despite his timely appeal of the rejection,

and by removing the Grand Mufti's return address from two incoming letters.

The Equal Protection Clause protects prisoners from invidious discrimination.  This

provision does not mandate identical treatment for each individual; rather, it requires that "all

persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 439-40 (1985).  To state an equal protection claim, Plaintiff must allege facts showing

that he was treated differently from similarly-situated individuals and that the reason for the

different treatment was based on "impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person."  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks

and citation omitted).  A "plaintiff need not show ... that a government decisionmaker was

motivated solely, primarily, or even predominantly" by the improper classification; rather, it is sufficient that such classification was "a motivating factor." *United States v. Yonkers*, 96 F.3d 600, 611-12 (2d Cir. 1996). Intentional discrimination claims can be proven by, *inter alia*, pointing to laws that contain express discriminatory classifications, identifying a facially neutral law or policy that has been applied in an intentionally discriminatory matter, or demonstrating that a facially neutral statute had an adverse effect and was motivated by discriminatory animus. *Brown v. City of Oneonta*, 221 F.3d 337 (2d Cir. 2000). Additionally, with respect to claims of religious discrimination in violation of the Equal Protection Clause, "[i]ndividuals will generally not be heard to complain that government speech favors one viewpoint over another unless . . . the challenged speech violates the Establishment Clause [as well]." *Am. Atheists, Inc. v. Port Auth. of New York & New Jersey*, 760 F.3d 227, 246 (2d Cir. 2014).

Plaintiff alleges that he was denied permission to purchase a fez while members of the Nation of Islam and the Five Percenters are permitted to purchase crowns, notwithstanding the fact that fezzes and crowns are very similar in design. [Doc. 1 ¶ 27.] This allegation is sufficient to state a plausible claim that Plaintiff is being treated differently than similarly-situated prisoners because of his religion. But Plaintiff's allegations against the Mailroom Defendants fail to state a plausible claim under the Equal Protection Clause because Plaintiff does not allege that he was treated differently than other similarly-situated individuals on the basis of his religion. *See, e.g.*, *Rossi v. Fishcer*, No. 13-CV-3167 PKC DF, 2015 WL 769551, at *13 (S.D.N.Y. Feb. 24, 2015) ("Courts in the Second Circuit have emphasized that 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'" (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994))); *King v. New York State*

*Div. of Parole*, 260 Fed. App'x 375, 379-80 (2d Cir. 2008) (affirming dismissal of equal protection claim where petitioner "failed to identify a single individual with whom he can be compared for Equal Protection purposes"). As with his Establishment Clause claims, Plaintiff only states in conclusory terms that the Mailroom Defendants' actions were religiously motivated. Crucially, he does not allege that Defendants ***actually*** treated him differently than anyone else. Plaintiff's equal protection claims against the Mailroom Defendants are thus dismissed.

      E.   <u>First Amendment Mail Interference Claims Against the Mailroom Defendants</u>

Plaintiff alleges that Defendants Blanchard, White and Norton were responsible for removing the return address on two letters from the Grand Mufti, and suggests that these actions "violated law governing U.S. mail." [2] [Doc. 6 ¶ 38.] The Court sees no basis for this claim.

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). However, not every instance of interference with a prisoner's mail will give rise to a constitutional violation. For example, allegations of one or two incidents of mail tampering that do not result in the plaintiff suffering any damage are generally insufficient to give rise to a constitutional violation. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *see also Pacheo v. Comisse*, 897 F. Supp. 671, 681 (N.D.N.Y. 1995) (dismissing inmate's claim based on a single instance in which defendants allegedly opened his legal mail outside of his presence because "he has shown no prejudice as a result of the allegedly unauthorized opening"). Rather,

---

[2] Plaintiff does not specify which law Defendants' conduct purportedly violates, but, liberally construing Plaintiff's pleadings, the Complaint can be read to assert a First Amendment claim for interference with mail.

to establish a claim for interference with regular, non-legal mail in violation of the First Amendment "an inmate must show a pattern and practice of interference that is not justified by any legitimate penological concern." *Singleton v. Williams*, No. 12-cv-02021 (LGS), 2014 WL 2095024, at *3 (S.D.N.Y. May 20, 2014) (internal quotation marks and citation omitted).

The facts alleged by Plaintiff—two incidents of purported interference with the envelope containing Plaintiff's mail—do not constitute a "pattern or practice of interference with [Plaintiff's] incoming non-legal mail." *Guillory v. Weber*, No. 9:12-CV-280 LEK/RFT, 2015 WL 1419088, at *12 (N.D.N.Y. Mar. 27, 2015) (two occasions of interference with nonlegal mail does not constitute a "pattern or practice" giving rise to a First Amendment violation); *see also Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *6-7 (N.D.N.Y. Mar. 9, 2009) (finding that neither one instance of interference with incoming, non-legal mail nor two instances of mail interference with incoming, legal mail amount to a pattern and practice of mail interference). Nor does Plaintiff allege that he suffered any prejudice due to the Mailroom Defendants' actions. He does not, for example, allege that he did not receive the letters or was otherwise prevented from corresponding with the Grand Mufti. *See Allah v. Greiner*, No. 03 CIV. 3789 (NRB), 2004 WL 1713811, at *6 (S.D.N.Y. July 29, 2004), (finding that plaintiff must allege that he suffered an injury in order to sustain a claim for interference of mail); *see also Davis*, 320 F.3d at 351. Accordingly, all claims against Defendants Blanchard, White and Norton pertaining to their alleged removal of the return address on incoming mail are dismissed.

F.  <u>Fifth Amendment Due Process Claims Against the Mailroom Defendants</u>

Plaintiff next contends that Defendants Blanchard, Norton and White denied him due process of the laws by returning the book to the vendor before his appeal of the rejection notice

15

was decided. The Due Process Clause protects against the deprivation of a protected property interest. A prisoner can state a due process claim for loss or destruction of property, however, only if the state has not created adequate post-deprivation remedies. *See Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

Connecticut provides a remedy for lost or destroyed property. Under Connecticut General Statutes § 4-141, et seq., a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for his claim. *See* Conn. Gen. Stat. § 4-142. The Department of Correction has established an administrative remedy for lost or destroyed property. *See* DEPARTMENT OF CORRECTION ADMINISTRATIVE DIRECTIVE 9.6(16)(B) , http://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited Nov. 9, 2018). Thus, a prisoner first must utilize the administrative remedy and then can proceed to the Claims Commission if his claim is denied.

As the Department of Correction and State of Connecticut provide adequate post-deprivation remedies, the plaintiff's due process claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1)

G. Retaliation Claims Against the Mailroom Defendants

Plaintiff also alleges that Defendants Blanchard, Norton and White retaliated against him for complaints he made about their mailroom practices. To state a Section 1983 retaliation claim, a plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by

16

specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Filing a grievance is a constitutionally protected activity and, therefore, can constitute the required protected conduct to support a retaliation claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The plaintiff alleges that he filed a grievance after the second time the return address was removed from a letter from the Grand Mufti. [Doc. 6 ¶ 34.] He alleges that, in response and in violation of prison protocol, Defendants Blanchard, Norton, and White returned a book he had ordered to the vendor before his appeal of the rejection notice was decided. [*Id.* ¶ 45.] The Court considers these allegations sufficient at this stage of the litigation for the retaliation claim to proceed. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners ... have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").

## H.  Connecticut Constitution Claims Against All Defendants

Finally, Plaintiff alleges that the Defendants violated his rights under the following provisions of the Connecticut Constitution:  Article First § 3 ("The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in

the state….");  Article First § 8 ("No person shall be . . . deprived of life, liberty or property with

due process of law . . . ."); Article First § 14 (""The citizens have a right . . . to apply to those

invested with the powers of government, for redress of grievances, or other proper purposes, by

petition, address or remonstrance."); and Article First § 20 ("No person shall be denied equal

protection of the law nor be subjected to segregation or discrimination in the exercise or

enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national

origin, sex or physical or mental disability.").

The Connecticut Supreme Court has held that it does not intend to create a cause of

action for every alleged state constitutional violation.  *See Lopez v. Smiley*, 375 F. Supp. 2d 19,

25 (D. Conn. 2005) (citing *Binette v. Sabo*, 244 Conn. 23, 47 (1998)).  Thus, as a threshold

matter we must determine whether State of Connecticut has recognized a private right of action

under these state constitutional provisions.

There is no established private right of action under the religious discrimination, due

process, or equal protection provisions (Article First §§ 3, 8, and 20) of the Connecticut

Constitution.  Accordingly, courts in this district have routinely declined to exercise

supplemental jurisdiction over state constitutional claims stemming from these provisions.  *See,

e.g.*, *Doe v. Mastroloni*, 2016 WL 593439, at *16-*17 (D. Conn. Feb.1, 2016) (declining to

exercise supplemental jurisdiction over state constitutional provisions, including Article First §§

3, 8 and 20, where state courts have declined to recognize a private right of action) (citing cases);

*Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 187-88 (D. Conn. 2015) (declining to

exercise supplemental jurisdiction over state constitutional claim under Article First § 8); *Lopez*,

375 F. Supp. 2d at 25 (declining to exercise supplemental jurisdiction over claims for money

damages and declaratory and injunctive relief based on violations of, *inter alia*, Article First § 8 of the Connecticut Constitution); *Crowley v. Town of Enfield*, No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, §§ 8 and 20); *M.A. v. City of Torrington*, No. 3:10 cv 1890 (JBA), 2012 WL 3985166, at *4 (D. Conn. Sept. 10, 2012) (declining to recognize a cause of action under Article First § 20); *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199 (D. Conn. 2010) (declining to recognize a private right of action under, *inter alia*, Article First § 20); *Marshall v. Town of Middlefield*, No. 3:10 cv 1009 (JCH), 2012 WL 601783, at *9 (D. Conn. Feb. 23, 2012) (declining to recognize a private right of action under*, inter alia*, Article First § 20); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) ("The court finds that there is no private cause of action for monetary damages under the equal protection and due process provisions [Art. First, §§ 1, 8, and 20] of the Connecticut Constitution.").  Given that the provisions at issue raise novel and undeveloped issues of state law, and out of deference to the State as the final arbiter of its own constitution, we will decline to exercise supplemental jurisdiction over Plaintiff's state law claims under Article First, §§ 3, 8, and 20 of the Connecticut Constitution.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the claim raises a novel or complex issue of State law.").

Connecticut courts have, however, recognized a private right of action under Article First § 14, which protects the right to apply to governmental authorities for redress of grievances.  *See Ward*, 154 F. Supp. 2d at 356.  This provision is related to Plaintiff's federal retaliation claim, and for the same reasons that Plaintiff's federal retaliation claim may proceed, state law claims

against the Mailroom Defendants pursuant to Article First § 14 of the Connecticut Constitution may also proceed at this time.

## IV.    Conclusion

In accordance with the foregoing analysis, the Court enters the following orders:

(1)    Plaintiff's First Amendment Free Exercise Clause, First Amendment Establishment Clause, and Equal Protection Clause claims will **PROCEED** against Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla in their individual capacities for damages and in their official capacities for injunctive relief.  Plaintiff's RLUIPA claim will also **PROCEED** against Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla in their official capacities for injunctive relief.

(2)    All of Plaintiff's claims against Defendants Blanchard, Norton, and White arising from removal of the Grand Mufti's return address from incoming mail are **DISMISSED**.

(3)    Plaintiff's First Amendment Free Exercise Clause claim in connection with Plaintiff's book order will **PROCEED** against Defendants Blanchard, Norton, and White in their individual capacities for damages and in their official capacities for injunctive relief.  Plaintiff's RLUIPA claim in connection with Plaintiff's book order will **PROCEED** against Defendants Blanchard, Norton, and White in their official capacities for injunctive relief.

(4)    Plaintiff's retaliation claim will **PROCEED** against Defendants Blanchard, Norton, and White in their individual capacities for damages and in their official capacities for injunctive relief.

(5)    Plaintiff's due process claim against Defendants Blanchard, Norton, and White is **DISMISSED**.

(6)    Plaintiff's claims pursuant to Article First § 14 of the Connecticut Constitution against Defendants Blanchard, Norton, and White will **PROCEED**.

(7)    Plaintiff's claims pursuant to Article First §§ 3, 8, and 20 of the Connecticut Constitution are **DISMISSED**.

(8)    **The Clerk shall** verify the current work addresses for each Defendant with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint to the Defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(9)    **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, Failla, Blanchard, White, and Norton in their official

capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(10)    **The Clerk shall** deliver a copy of this Order to Plaintiff.

(11)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(12)    The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(13)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(14)    All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(15)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(16)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

It is SO ORDERED.

Dated:  New Haven, Connecticut
       November 19, 2018

                       */s/ Charles S. Haight, Jr.*
                       Charles S. Haight, Jr.
                       Senior United States District Judge