# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALI RICHARD,<br><br>        Plaintiff,<br>v.<br><br>STEVEN R. STROM, NANCY O'BRASKEY, REVEREND WILLIAMS, KARL LEWIS, JOHN ALDI, SCOTT ERFE, MICHAEL BIBENS, WILLIAM MULLIGAN, DEPUTY WARDEN MUDANO, COMMISSARY SERVICE MANAGER FAILLA, COUNSELOR SUPERVISOR BLANCHARD, CORRECTIONAL OFFICER WHITE, and MAILROOM PERSONELL NORTON,<br><br>        Defendants. | CASE NO. 3:18-cv-1451 (CSH)<br><br><br><br>MAY 7, 2019 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

The plaintiff, Ali Richard, currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, commenced this civil rights action against defendants Steven R. Strom, Nancy O'Braskey, Reverend Williams, Karl Lewis, John Aldi, Scott Erfe, Michael Bibens, William Mulligan, Deputy Warden Mudano, Commissary Service Manager Failla, Counselor Supervisor Blanchard, Correctional Officer White, and Mailroom Officer Norton. The first ten defendants are members of the Religious Review Committee ("the Committee defendants"). By Initial Review Order filed November 19, 2018, familiarity with which is assumed, the Court dismissed the Amended Complaint in part. Doc. 8. The remaining claims

are RLUIPA[1] claims against all defendants relating to Plaintiff's purchase of a fez and a religious book; First Amendment Free Exercise Clause, First Amendment Establishment Clause, and Fourteenth Amendment Equal Protection Clause claims against the Committee defendants relating to Plaintiff's request to purchase a fez; and First Amendment Free Exercise Clause and federal and state law retaliation claims against defendants Blanchard, White and Norton ("the Mailroom defendants") relating to Plaintiff's purchase of a religious book. Defendants have filed a motion to dismiss plaintiff's First Amendment claims for damages against the Committee defendants on the ground that they are protected by qualified immunity, and plaintiff's claim against the Mailroom defendants under Article first, section 14 of the Connecticut Constitution. For the reasons that follow, Defendants' motion is granted.

## I.      Facts

The relevant factual allegations from Plaintiff's Amended Complaint, as recounted in the Initial Review Order in the light most favorable to Plaintiff, are recited below.

Plaintiff is a Moorish-American and diligently practices his Moorish religion. Doc. 6 ¶ 20. The staff at MacDougall-Walker permit inmates of the Moorish Science religion to practice their faith individually using books, religious newspapers, audio recordings, and other items. *Id.* ¶ 21.

On or about December 14, 2017, Plaintiff submitted a written request to Defendant Williams, the Director of Religious Services for the Department of Correction, seeking to purchase a fez to be used during religious practice. *Id.* ¶ 22. In the Moorish religion, a fez is believed to symbolize spiritual and physical aspects of life and to provide spiritual protection.

---

[1] The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-2.

*Id.* ¶ 23. It is an "essential component of the Moorish religion and a requirement for all Moorish practitioners." *Id*.

On February 5, 2018, Plaintiff received written notification from Defendant Lewis that all ten members of the Religious Review Committee (the "Committee")—Defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla (the "Committee Defendants")—had denied his request to purchase the fez due to safety and security concerns. *Id.* ¶ 24. Plaintiff appealed the decision, arguing that the fez is an essential component of his religion and that the security concerns were unfounded. *Id.* ¶ 25. Plaintiff also noted that the Committee had previously approved requests from Nation of Islam and Five Percenter inmates to purchase crowns, which were similar to the fez in design. *Id*. The appeal was denied. Doc. 6 ¶ 26. As a result, Plaintiff contends that he has been unable to freely and fully practice his religion. *Id.* ¶ 27.

During this time, Plaintiff had been communicating with K. Bin Bey, the Grand Mufti of the Moorish Science Temple of America. *Id.* ¶ 28. On February 16, 2018, Plaintiff received a letter from the Grand Mufti. *Id.* ¶ 29. Mailroom personnel White and Norton had torn the return address from the envelope. *Id.* ¶¶ 29, 32. Plaintiff immediately reported the issue to the unit officer delivering the mail and submitted a written informal complaint to the deputy warden. *Id.* ¶ 30. Defendant Blanchard, the mailroom supervisor, responded to Plaintiff's complaint and assured him that it would not happen again. *Id.* ¶ 31. On March 23, 2018, Plaintiff received another letter from the Grand Mufti. *Id.* ¶ 33. Again, the return address had been torn off the envelope. *Id*. Plaintiff filed a grievance which was denied initially and on appeal. *Id.* ¶¶ 34-35.

Plaintiff also alleges that he ordered a book entitled "Nationality, Birthrights, and

3

Jurisprudence" in January 2018. Doc. 6 ¶ 39. The book "explains the legal process for becoming a Moorish-American, which the plaintiff must claim as his nationality in order to be recognized as a member of the Moorish Science Temple of America." *Id.* ¶ 40. Staff at MacDougall-Walker did not permit the book to enter the facility, telling the Plaintiff that the Media Review Committee had placed the book on the rejection list on July 21, 2015 based on safety and security concerns. *Id.* ¶ 41. Plaintiff appealed the decision and, on July 9, 2018, the Director of Security at MacDougall-Walker informed him that the book had been re-evaluated and the Media Review Committee's prior rejection overturned. *Id.* ¶¶ 42-43. However, Defendants Blanchard, White and Norton (the "Mailroom Defendants") returned the book to the vendor allegedly in retaliation for the Plaintiff previous complaints regarding mail issues, falsely claiming that they did not receive the Plaintiff's appeal within the time permitted for filing. *Id.* ¶¶ 44-45.

## II. **Standard of Review**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although detailed factual allegations are not required, *Keller v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Twombly*, 550 U.S. at 555. Plaintiff must, at a minimum, "plead[ ] factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In determining whether a plaintiff has met this standard, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

With respect to *pro se* litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to raise the strongest arguments [they] suggest[ ].").  Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

III. **Discussion**

There are three remaining groups of claims: RLUIPA claims relating to Plaintiff's purchase of a fez and a religious book against all Defendants; First Amendment First Amendment Establishment Clause, and Fourteenth Amendment Equal Protection Clause claims against the Committee defendants in connection with Plaintiff's request to purchase a fez; and First Amendment Free Exercise Clause and federal and state law retaliation claims against the Mailroom defendants in connection with Plaintiff's request to purchase a religious book.

Defendants move to dismiss the First Amendment claims against the Committee defendants for damages relating to Plaintiff's purchase of a fez, on the ground that the Committee defendants are protected by qualified immunity. They also move to dismiss Plaintiff's claim against the Mailroom defendants under Article first, section 14 of the Connecticut Constitution, arguing that Connecticut state courts have never recognized a private right of action for damages under this section. Defendants state that they do not seek dismissal of Plaintiff's RLUIPA claims and do not address Plaintiff's equal protection claim, the Free Exercise Clause or federal retaliation claims against the Mailroom defendants, or the requests for declaratory and injunctive relief under federal law.

    A.    **Qualified Immunity**

Defendants first argue that they are protected by qualified immunity on the claim for damages relating to purchase of the fez. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

Two conditions must be met to deny an official the protection of qualified immunity. First, the facts alleged or shown by the plaintiff must state a violation of a statutory or constitutional right by the official and, second, they must establish that the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Under the second prong, a right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 731 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although there is no requirement that a case have been decided which is directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. In determining whether the right is clearly established, the district court looks to case law from the Supreme Court and the Courts of Appeals. *Terbesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). District court decisions do not constitute clearly established law.

> A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. Many Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity. Otherwise said, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity.

*Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal citations omitted); *see also Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) ("No precedential decision of the Supreme Court or this Court 'clearly establishes' that the actions of [the defendants], viewed in the circumstances in which they were taken, were in violation of the Fourth Amendment.").

Additionally, "a broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640). Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also City of Escondido v. Emmons*, ___ U.S. ___, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity. 'This Court has repeatedly told courts … not to define clearly established law at a low level of generality.'" (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam))). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (citing *Anderson*, 483 U.S. at 640). The legal principle at

issue must clearly prohibit the officer's conduct in the particular circumstances before him. *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 590 (2018).

The court may consider a qualified immunity defense on a motion to dismiss if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) (internal quotation marks omitted). In considering qualified immunity on a motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the plaintiff's claim and those that would defeat the qualified immunity defense. *Id.*

Plaintiff identified the rights at issue as the right to worship and be treated equally. ECF No. 28-1 at 1. This is too broad a statement. As explained above, the Supreme Court requires that the constitutional right be defined with specificity. Thus, the Court considers the right at issue to be Plaintiff's First Amendment right to possess religious headgear in light of institutional concerns for safety and security. There are no Supreme Court or Second Circuit cases establishing a First Amendment right to possess and wear religious headgear under similar circumstances. Indeed, in an analogous case, the Second Circuit upheld a New York Department of Corrections regulation prohibiting wearing of Rastafarian crowns for safety and security reasons. *See Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990). Further, although of no precedential value, one district court case within the circuit has rejected a First Amendment claim for denial of permission to wear a fez where permission was denied for safety and security reasons. *See Gilmore-Bey v. Coughlin*, 929 F. Supp. 146, 152-53 (S.D.N.Y. 1996) (finding without merit Free Exercise and Establishment Clause claims relating to denial of permission to

9

wear a fez where regulation permitted religious accommodation "consistent with the safe and secure operation of correctional facilities").

As there are no Supreme Court or Second Circuit cases establishing a First Amendment right to possess and wear religious headgear under similar circumstances, the Committee defendants would not understand that their decision to deny Plaintiff's request to purchase a fez for safety and security reasons violated a constitutional right. Thus, the Committee defendants are protected by qualified immunity on the First Amendment claim regarding purchase of a fez. Defendants' motion to dismiss is granted on this ground.

Plaintiff argues that the Department of Correction permits inmates to wear Rastafarian crowns and baseball caps, both of which can be used to conceal contraband. This argument supports Plaintiff's Fourteenth Amendment Equal Protection Clause claim, which is not the subject of the motion to dismiss. Plaintiff also addresses the merits of his First Amendment claim. Whether the Court should now find that Plaintiff has a First Amendment right to wear a fez is irrelevant to the question whether that right was clearly established when the Committee defendants acted. As Plaintiff's arguments do not address the relevant issue, whether the Committee defendants are protected by qualified immunity, the arguments are not considered in detail in this order.

B. State Constitutional Claim

Defendants next argue that Court should reconsider the Initial Review Order and dismiss Plaintiff's claim under Article first, section 14 of the Connecticut Constitution because the Connecticut Supreme Court has not recognized a private right of action for violation of this provision.

In the Initial Review Order, the Curt relied on *Ward v. Housatonic Area Regional Transit Dist.*, 154 F. Supp. 2d 339 (D. Conn. 2001), in finding that the Connecticut Supreme Court had recognized a private right of action under Article first, section 14. *Id.* at 356 (citing *State v. Linares*, 232 Conn. 345, 377-87, 655 A.2d 737 (1995)). Defendants contend that the court in *Ward* misconstrued the holding in *Linares*.

*Linares* was a criminal appeal in which the criminal defendant challenged the constitutionality of the statute under which she was convicted. 232 Conn. at 348. Linares argues that the statute violated her rights under the free speech provisions of the Connecticut Constitution, Article first, sections 4, 5, and 14. *Id.* at 377, 380. The Connecticut Supreme Court determined the proper standards to apply when analyzing such a claim and concluded that the statute in question did not violate Linares' state constitutional rights. *Id.* at 377-87. At no point, however, did the Connecticut Supreme Court state that Linares had a private right of action under section 14.

Three years later, the Connecticut Supreme Court held that there was a private right of action for damages under Article first, sections 7 and 9 of the Connecticut Constitution. *Binette v. Sabo*, 244 Conn. 23, 26, 710 A.2d 688 (1998). The cause of action in *Binette*, permitting claims for money damages for illegal searches and seizures of private homes by police officers, is similar to, and was patterned after, the cause of action under the Fourth Amendment created in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). The Connecticut Supreme Court emphasized, however, "that our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. The court explained that the decision to recognize

11

causes of action for violation of other state constitutional provisions would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48. The Connecticut Supreme Court has not engaged in such an analysis with regard to Article first, section 14.

Absent clear recognition of a private right of action under section 14, cases in both this district court and the Connecticut Superior Court have declined to recognize one. *See, e.g., Lopez v. Smiley*, 375 F. Supp. 2d 19, 23–25 (D. Conn. 2005) (declining to recognize private right of action under various provisions of Connecticut Constitution, including Article first, section 14, and deferring to state courts to recognize such a cause of action in the first instance); *Wylie v. West Haven*, No. CV065006403, 2010 WL 2196493, at *3 (Conn. Super. Ct. Apr. 21, 2010) ("there is no recognized private right of action under Article first, § 14."); *Torres v. Armstrong,* No. CV990427057S, 2001 WL 1178581, at *5-*7 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claims for money damages and injunctive relief brought directly under Article first, §§ 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution); *see also Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 409 (D. Conn. 2017) ("Connecticut courts have rejected the argument that the free-speech provisions of the Connecticut Constitution [including section 14] are independently actionable apart from the cause of action that is prescribed under § 13-52q.") (citing cases).

In opposition, Plaintiff merely argues that, although Article first, section 14, has not been used by state courts to provide a private right of action, the section does not preclude such a claim. Doc. 28 at 2. In light of the statement in *Binette* that a constitutional right of action will not be recognized absent a multifactor analysis of the fact of the particular case, 244 Conn. at 48, this argument is unpersuasive.

After careful review of *Linares* and the direction in *Binette,* the Court concludes that *Ward* misinterpreted Connecticut state law. Accordingly, the Court grants Defendants' motion to dismiss as to the claim for violation of Article first, section 14 of the Connecticut Constitution.

## IV. Conclusion

Defendants' motion to dismiss [Doc. 27] is **GRANTED** and Plaintiff's motion in opposition [Doc. 28] is **DENIED**. The First Amendment Free Exercise Clause and First Amendment Establishment Clause claims for damages against defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla relating to the fez, and the supplemental state law claim for violation of Article first, section 14, of the Connecticut Constitution are dismissed.

The case will proceed on the RLUIPA claims against all Defendants; the First Amendment Free Exercise Clause and Establishment Clause claims for injunctive relief against defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla relating to the fez; the Equal Protection Clause claims against defendants Strom, O'Braskey, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla relating to the fez; the First Amendment Free Exercise Clause claim against defendants Blanchard, White, and Norton relating to the book purchase; and the federal retaliation claim against defendants Blanchard, White, and Norton relating to the book purchase.

It is **SO ORDERED**.

Dated: New Haven, Connecticut
      May 7, 2019

                              */s/ Charles S. Haight, Jr.*
                              Charles S. Haight, Jr.
                              Senior United States District Judge